UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

PARK LANE IBS, LLC and STONEHAVEN
LLC,

                              Petitioners,                    23-cv-8620 (PKC)

        -against-                                    OPINION AND ORDER

UNBND GROUP PTY LTD.,

                              Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        On July 10, 2023, a FINRA arbitration panel issued an Amended Award that

granted certain relief to petitioners Park Lane IBS, LLC and Stonehaven LLC (collectively,

"Park Lane") but denied "any requests for attorney's fees" and "[a]ny and all claims for relief not

specifically addressed herein . . . ." (the "Amended Award").  (ECF 20-4.)  Park Lane has filed a

petition to partially vacate the Amended Award to the extent that it denied its claims for

indemnification and attorneys' fees.  (ECF 1-2.)  Park Lane separately move to confirm all other

aspects of the Amended Award.  (ECF 32.)

        Unbnd states that the Amended Award should be confirmed in its entirety, "with

no exceptions."  (ECF 36 at 1.)  Unbnd has separately moved to dismiss the Petition to Vacate,

asserting that it was not timely served with process within the 90-day period prescribed by the

Federal Arbitration Act, 9 U.S.C. § 12 (the "FAA").  (ECF 18.)

        For the reasons that will be explained, the Court concludes that Unbnd was timely

served with process, and its motion to dismiss the Petition to Vacate for failure to effectuate

timely service will be denied.  The arbitration panel acted within its authority and discretion in

denying attorneys' fees and indemnification, and Park Lane's petition to partially vacate the

Amended Award will be denied.  The Amended Award will be confirmed in its entirety.

BACKGROUND.

    Unbnd is an Australian company that describes itself as "an up-and-coming

augmented, virtual reality, and interactive installation business . . . ."  (ECF 1-2 at 165.)  In early

2020, Unbnd became concerned that the Covid-19 pandemic could negatively affect its access to

capital, so it sought new sources of outside funding.  (See, e.g., ECF 1-2 at 165-66.)  On March

30, 2020, Unbnd entered into an "Approved Client Referral Agreement" with Park Lane and

Stonehaven (the "Agreement").  (ECF 1-2 at 167, 171; ECF 20-1.)  Under the Agreement, Park

Lane was to raise capital for Unbnd through its contacts in the technology and professional-

sports industries, with Stonehaven acting as an "alternative asset placement agent platform."

(ECF 1-2 at 169-72.)  The Agreement provided that they would be compensated with

percentage-based fees and warrants giving them the right to buy a percentage of Unbnd's

preferred shares.  (ECF 20-1 § E.)

    According to Unbnd, Park Lane did not perform as promised and wrongfully

demanded payments that were not due and owing.  (ECF 1-2 at 174-79.)  The Agreement

provided that "[a]ny dispute or controversy" arising out of it "shall be settled by arbitration in

accordance with the Code of Arbitration Procedure of FINRA . . . ."  (ECF 20-1 § J(12).)  Unbnd

terminated the Agreement effective July 6, 2021 and initiated arbitration proceedings through

FINRA Dispute Resolution, asserting contract-related claims and seeking declaratory relief as to

whether it was required to make additional payments to Park Lane.  (Pet. ¶¶ 28-29; ECF 26-1

(Unbnd Statement of Claim).)  Park Lane filed an Answer and asserted seven counterclaims.

(ECF 26-7.)  A Proposed Final Award submitted by Park Lane sought a total of $1,033,273 in

money damages and on order directing Unbnd to issue two warrants totaling approximately 2.5% of Unbnd common stock on a diluted basis. (ECF 26-6.)

A hearing took place over six days in January, February and April 2023. (Pet. ¶ 36.) A three-member arbitration panel issued a written Award on May 12, 2023. (ECF 20-2.) The Award noted that Unbnd brought claims for breach of the duty of good faith and fair dealing, breach of contract, negligent misrepresentation, fraudulent inducement, and declaratory relief, with all claims premised on the assertion that Park Lane and Stonehaven failed to provide the promised referral and placement services. (ECF 20-2 at 6.) Unbnd sought damages, interests, fees and costs, as well as declaratory relief stating that Park Lane was not entitled to certain payments it claimed to be owed under the Agreement. (Id.) Park Lane brought counterclaims for breach of contract, declaratory judgment, promissory estoppel, quantum meruit, unjust enrichment, and indemnification and attorneys' fees. (Id.) It sought an order directing Unbnd to issue preferred warrants of its stock, compensatory damages, declaratory relief, interest, fees and costs. (Id.)

The Award set forth its conclusions principally in three numbered paragraphs. (ECF 20-2 at 7.) Paragraph 1 concluded that Park Lane is "not owed any additional fees for investments received after termination of the Agreement" unless Unbnd received investments from certain listed entities prior to July 6, 2023. (Id.) Paragraph 2 ordered Unbnd "to immediately issue warrants" to Park Lane equaling 0.805% of Unbnd stock. (Id.) Paragraph 2 further provided that "[u]nless and until one of the Investing Entities converts its convertible note to equity pursuant to the convertible notes issued to the Investing Entities in or about September 2020, [Park Lane] shall not have any right to exercise the warrants issued pursuant to this Order." (Id.) The Award defines "Investing Entities" as "various parties" that received

convertible notes issued in connection with $1.7 million in investments made in Unbnd.  (Id.)

Paragraph 3 stated in its entirety: "Any and all claims for relief not specifically addressed herein,

including any requests for attorneys' fees, are denied."  (Id.)  Accordingly, the panel denied all of

Unbnd's claims for relief, granted Park Lane's request for stock warrants, and granted its request

for additional fees only in the event that further investments were made by listed entities before

July 6, 2023.

   The arbitration panel then issued an "Amended/Modified Award" dated July 10,

2023 (the "Amended Award").  (ECF 20-4.)  The Amended Award stated that "[t]his amended

award is solely to correct an inadvertent inaccuracy and typographical error" related to the

warrants of Unbnd shares.  (ECF 20-4 at 8.)  It modified language about the calculation of the

exercise price on the warrants set forth in paragraph 2 of the Award.  (Id.)  The Amended Award

otherwise appears to be identical to the Award of May 12.

   Each party now describes itself as substantially prevailing in the arbitration.  Park

Lane notes that it was awarded warrants to purchase preferred shares of Unbnd equal to 0.805%

of the total stock.  (ECF 1-2 at 28-30.)  Unbnd, in turn, states that it "was pleased with the

entirety of the award," noting that the arbitrators denied Park Lane's claims for more than $1

million in damages inclusive of interest.  (ECF 36 at 2.)  Park Lane seeks to vacate the Amended

Award's denial of attorneys' fees and indemnification, but all parties agree that the remainder of

the Amended Award should be confirmed.

   Park Lane originally filed the Petition to Vacate in the Supreme Court of the State

of New York, New York County.  (ECF 1-2.)  Unbnd filed a Notice of Removal on September

29, 2023, invoking diversity jurisdiction between the Australian respondent and the petitioner

LLCs, whose members are all citizens of U.S. states.  (ECF 1; ECF 13 (Amended Notice of Removal).)

THE FAA GOVERNS THE PARTIES' MOTIONS.

The Agreement's arbitration clause contains a choice-of-law provision stating that "[t]he Agreement shall be governed by the internal laws of the State of New York without respect to any conflict of law principles."  (Agrm't § J(12), at ECF 26-3.)  Park Lane urges that this choice-of-law provision applies to Unbnd's motion to dismiss on timeliness grounds, and that the motion should be governed by New York law rather than the FAA.  As to the merits of Park Lane's motion to vacate, both sides cite to New York authority applying the CPLR, as well as authorities applying the FAA.

The parties' motions are governed by the FAA because the Agreement's choice-of-law provision governs interpretation of the contract and not the enforcement of the arbitration clause.  "The New York Court of Appeals has held that New York arbitration law applies in cases otherwise governed by the FAA where the choice of law provision 'states that New York law shall govern both the agreement and its enforcement.'  However, '[i]n the absence of more critical language concerning enforcement,' the New York Court of Appeals has found that the parties did not intend to modify the default rules of the FAA."  Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd., 2008 WL 463720, at *2 (S.D.N.Y. Feb. 19, 2008) (Koeltl, J.) (quoting Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 4 N.Y.3d 247, 253 (2005) (emphasis omitted)); accord Whyte v. WeWork Companies, Inc., 2020 WL 3099969, at *4 (S.D.N.Y. June 11, 2020) (McMahon, J.).

In Rabinowitz v. Kelman, 2024 WL 1700037, at *5 (S.D.N.Y. Apr. 19, 2024), Judge Román recently concluded because "the Agreements are silent as to the governing arbitral

law, this Court will apply the FAA" in deciding whether a motion to confirm was timely, rather than the laws of New York or New Jersey incorporated in choice-of-law provisions that did not specify their application to arbitral law in a federal proceeding."  He added that "the dispute is clearly governed by the FAA as it involves a dispute between a U.S. citizen who is a resident of New York and non-U.S. citizen who is a resident in Israel," and that the "FAA's application to transactions 'involving commerce' is broad and the 'functional equivalent of "affecting"' commerce."  Id. (quoting Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 273-74 (1995)).  Similarly, Judge Furman applied the FAA on a motion to vacate, rather than New York law, because "the parties here did not contractually agree to apply New York's vacatur standards to their arbitration.  Instead, the agreements between the parties . . . were silent as to the choice of arbitral law."  LGC Holdings, Inc. v. Julius Klein Diamonds, LLC, 238 F. Supp. 3d 452, 466 (S.D.N.Y. 2017) (collecting cases).

    Because the Agreement did not specify that New York arbitral law governs on matters of enforcement, the FAA governs this proceeding.  As will be discussed, however, the petition to vacate is timely under both the FAA and New York law.  Regarding the merits, the parties do not identify any conflict between New York and the FAA on issues relevant to vacatur or confirmation, "and the holdings of this case can rest on either body of law."  Joval Paint Corp. v. Drew, 2021 WL 1163074, at *5 (E.D.N.Y. Mar. 26, 2021) (Mauskopf, J.) (noting absence of conflict between CPLR 7511 and the FAA for purpose of parties' dispute); accord Barzelatto v. Spire Sec., LLC, 2019 WL 8889865, at *3 (S.D.N.Y. Nov. 5, 2019) (CPLR and FAA did not conflict for purpose of deciding motion to vacate).

UNBND'S MOTION TO DISMISS ON TIMELINESS GROUNDS WILL BE DENIED.

   Unbnd urges that the motion to vacate should be denied because it was not timely served within the strict three-month limitations period prescribed by the FAA.  The FAA provides that a "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  "Section 12 contains '[n]o exception' to the three-month limitations period." Dalla-Longa v. Magnetar Cap. LLC, 33 F.4th 693, 695 (2d Cir. 2022) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984)).  "'The period provided for [in 9 U.S.C. § 12] is a statute of limitations and the failure to bring a timely motion is an absolute bar to an application seeking vacatur or modification.'"  Lobaito v. Chase Bank, 2012 WL 3104926, at *5 (S.D.N.Y. July 31, 2012) (Gardephe, J.) (quoting Northeast Sec., Inc. v. Quest Capital Strategies, Inc., 2003 WL 22535093, at *2 (S.D.N.Y. Nov. 7, 2003) (Sweet, J.)).

   "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  Khan v. Khan, 360 Fed. App'x 202, 203 (2d Cir. 2010) (summary order).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must looks to matters outside the complaint to determine whether it has jurisdiction."  Cassano v. Altshuler, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (Román, J.).  "In measuring sufficiency of process before removal, the court looks to standards established by state law."  SK's Cosmetic Boutique Inc. v. J.R. Silverberg Realty, LLC, 2020 WL 3451324, at *2 (S.D.N.Y. June 24, 2020) (Briccetti, J.) (quotation marks omitted); accord Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 383 (S.D.N.Y. 2006) ("[F]ederal courts are to apply the state law regarding proper service in state actions before they are removed.") (Karas, J.) (emphasis in original; collecting cases); Zeballos v. Tan, 2006 WL 1975995, at *6 (S.D.N.Y.

July 10, 2006) ("Because service was attempted only <u>before</u> removal to federal court, the propriety of service must be determined by reference to state law.") (Lynch, J.) (emphasis in original).

"If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." <u>Volkswagenwerk Aktiengesellschaft v. Schlunk</u>, 486 U.S. 694, 700 (1988). Because Park Lane transmitted papers to Unbnd in Australia as required by New York law, the method of service must also satisfy the Hague Convention.

Park Lane commenced the proceeding in New York Supreme Court. The Notice of Removal was filed on September 29, 2023, after Park Lane filed proof of service in state court. Because Unbnd challenges the sufficiency of service prior to removal, New York law governs the adequacy of service. <u>See</u>, <u>e.g.</u>, <u>Zeballos</u>, 2006 WL 1975995, at *6.

Unbnd identifies itself as "an Australian entity, incorporated in Australia and with its principal place of business in Canberra, ACT, Australia." (Amended Notice of Removal ¶ 3(c).) Section 307(a) of the New York Business and Corporation Law provides that service of process upon an unauthorized foreign corporation may be effectuated through the New York Secretary of State as its agent. In addition to service upon the Secretary of State, service must be personally delivered to the foreign corporation consistent with the law of the jurisdiction where service is made, or, alternatively, "sent by or on behalf of the plaintiff to such foreign corporation by registered mail with return receipt requested, at the post office address specified for the purpose of mailing process, on file in the department of state . . . or if no such office is there specified, to the last address of such foreign corporation known to the plaintiff." N.Y. B.C.L. § 307(b). When service is effectuated by mail, proof of service must be filed within thirty

days, attaching a return receipt signed by the foreign corporation or other proof of delivery.  N.Y. B.C.L. § 307(c).

On August 15, 2023, Park Lane personally delivered the Petition and accompanying papers to the office of the New York Secretary of State.  (Stujenske Dec. ¶ 4.)  On August 22, 2023, Park Lane sent a Unbnd a copy of the Petition and accompanying papers through registered mail to a business address in Sydney and a Post Office Box in Canberra.  (Id.)  The Sydney address is published on Unbnd's website and the Canberra address is Unbnd's registered address for the service of foreign documents.  (Id.)  On September 11, 2023, Park Lane filed a proof of mailing and receipt in New York Supreme Court, and on September 26, 2023, filed a return receipt from the Sydney address with a "Destination Employee Signature" of Stephanie Siracusa, dated September 7, 2023.  (Id. ¶¶ 5-6 & Exs. A, B.)

Park Lane has come forward with evidence that it served the Petition on Unbnd consistent with the requirements of N.Y. B.C.L. § 307(c).  It served the Petition on the New York Secretary of State, and, separately through registered mail to Unbnd's business address in Sydney and to a post office box in Canberra registered for receiving service.  Park Lane also filed a return receipt signed on behalf of Unbnd.  Unbnd does not urge that either address was not a proper address for it to receive service.  All of the above occurred within 90 days of the July 10, 2023 issuance of the Amended Award.

Service by registered mail to Australia also complied with the Hague Convention. Article 10(a) of the Hague Convention states that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with – a) the freedom to send judicial documents, by postal channels, directly to persons abroad . . . ."  "[T[he traditional tools of treaty interpretation unmistakably demonstrate that Article 10(a) encompasses service by mail."  Water

Splash, Inc. v. Menon, 581 U.S. 271, 284, (2017); see also Burda Media, Inc. v. Viertel, 417 F.3d 292, 300 (2d Cir. 2005) (the Hague Convention allows for "service by mail if the receiving state does not object . . . .").

      Australia has published a Declaration addressing Article 10, which states: "Australia does not object to service by postal channels, where it is permitted in the jurisdiction in which the process is to be served.  Documents forwarded via postal channels must be sent via registered mail to enable acknowledgement of receipt."  (Stujenske Dec. Ex. D.[1])  Rule 6432(1) of Court Procedure Rules 2006 of the Australian Capital Territory, which encompasses Canberra, provides that "[a] document may be served on a corporation under these by leaving it at, or sending it by post to, the corporation's registered agent."  (Stujenske Dec. Ex. E.)  Unbnd points to Australian Capital Territory Rule 6562, but that provision governs a procedure where a party effects service through a judicial "due form of request."  (See Mann Dec. Ex. 6 at 21-22.)  It addresses a different method of service and does not require that service be made exclusively through a "due form of request."  Courts have repeatedly noted that Australia does not object to service by mail.  See, e.g., Pesic v. Mauritius Int'l Arb. Ctr. Ltd., 2024 WL 1363573, at *1 (S.D.N.Y. Mar. 29, 2024) ("Australia did not object to Article 10, only adding a clarification with respect to mail service that has no bearing here . . . .") (Furman, J.); XYZ Corp. v. Individuals, Partnerships & Unincorporated Associations Identified in Schedule A, 2024 WL 1579910, at *2 (S.D.N.Y. Apr. 11, 2024) (noting that Australia does not object to service by postal channels) (Schofield, J.) (in dictum); Williams v. Licari, 2023 WL 6048774, at *4 (E.D. Tex. Sept. 14, 2023) (service by mail to Australia satisfied the Hague Convention and the local

---

[1] Australia's Declarations are available at: https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1062&disp=resdn (last visited: Sept. 9, 2024).

procedural rules of South Australia).  The Court therefore concludes that Park Lane served

Unbnd consistent with the requirements of the Hague Convention.

    Lastly, Unbnd argues that service was untimely because the mandatory 90-day

period to effect service began to run on May 12, 2023, when the arbitrators issued the initial

Award, rather than on the July 10, 2023 date of the Amended Award.  But the Petition is

expressly directed to the Amended Award and not the initial Award.  Unbnd contends that using

the later-dated Amended Award would permit "a dilatory party" to seek a clerical correction "for

the sole purpose of obtaining a three-month extension on their petition to vacate."  (Reply at 7.)

There is no suggestion in the record of any such conduct in this case, where the Amended Award

was issued at Unbnd's own urging.  (Mann Dec. ¶ 3.)  Because Unbnd was served within 90 days

of the Amended Award, the Court concludes that service was timely.  See, e.g., Vector Media

Grp., Inc. v. MyLocker.com, LLC, 2020 WL 5371195, at *2 n.2 (S.D.N.Y. Sept. 8, 2020)

(calculating 90-day period from the date of amended award, which corrected amounts owed to

petitioner) (Rakoff, J.).

THE PETITION TO PARTIALLY VACATE THE AWARD WILL BE DENIED.

    Park Lane seeks to vacate only that portion of the Amended Award that denied its

request for indemnification and attorneys' fees, urging that the arbitration panel acted with

manifest disregard for the law.

    "Section 10 of the FAA allows a court to vacate an arbitration award in four

circumstances, primarily involving fraud, corruption, partiality, misconduct, or imperfect

execution or exceeding of arbitral powers.  See 9 U.S.C. § 10  We have held that 'as judicial

gloss on the[ ] specific grounds for vacatur of arbitration awards' in the FAA, an arbitrator's

'manifest disregard' of the law or of the terms of the arbitration agreement 'remains a valid

ground for vacating arbitration awards.'" <u>Seneca Nation of Indians v. New York</u>, 988 F.3d 618, 625 (2d Cir. 2021) (quoting <u>Schwartz v. Merrill Lynch & Co.</u>, 665 F.3d 444, 451-52 (2d Cir. 2011)).

       A movant seeking vacatur "'bears a heavy burden,'" and an award will be vacated for manifest disregard "'only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent.'" <u>Id.</u> (quoting <u>T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.</u>, 592 F.3d 329, 339 (2d Cir. 2010)). An award will be upheld if "the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract," and vacatur is only warranted "when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." <u>Id.</u> (quotation marks omitted). To satisfy the manifest disregard standard, the movant must show that the arbitrators "willfully flouted" governing law, and the reviewing court must make "an objective determination" that the arbitrators disregarded a well-defined and clearly applicable legal principle. <u>Id.</u>

       Park Lane urges that it is entitled to reasonable attorneys' fees and costs under the Agreement's fee-shifting provision. Section J(13) of the Agreement, which follows the arbitration clause, provides:

> In the event of any controversy, claim or dispute between the parties arising out of or relating to this Agreement, or the alleged breach thereof, the prevailing party shall, in addition to any other relief or award, be entitled to recover its reasonable attorneys' fees and all of the costs incurred in connection therewith, whether it be arbitration or other litigation, including any action at equity to enforce any rights hereunder.

(ECF 1-2 at 153.)

As noted, the Agreement provides that it "shall be governed by the internal laws of the State of New York . . . ." (Agrm't § J(12).)  Accordingly, "the meaning of 'prevailing party' must be determined in accord with New York law."  Arbordale Hedge Invs., Inc. v. Clinton Grp., Inc., 1999 WL 1000939, at *2 (S.D.N.Y. Nov. 4, 1999) (Mukasey, J.).  Under New York law, the prevailing party is the party that "prevailed with respect to the central relief sought . . . ."  Nestor v. McDowell, 81 N.Y.2d 410, 416 (1993).  "Such a determination requires an initial consideration of the true scope of the dispute litigated, followed by a comparison of what was achieved within that scope."  Blinds to Go (U.S.), Inc. v. Times Plaza Dev., L.P., 191 A.D.3d 939, 942 (2d Dep't 2021) (quotation marks omitted).

A "prevailing party" inquiry does not present a binary choice.  It can be the case that neither party is entitled to a "prevailing party" fees award.  See, e.g., Matter of Milton R., 197 A.D.3d 1174, 1176 (1st Dep't 2021); Free People of PA LLC v. Delshah 60 Ninth, LLC, 169 A.D.3d 622, 623 (1st Dep't 2019).  While a prevailing party need not obtain "total" victory, success on two of seven claims may not be sufficient to afford prevailing-party status when those claims were not "central" and the adversary "also thwarted a significant portion of [plaintiff's] litigation goals."  Blue Sage Cap., L.P. v. Alfa Laval U.S. Holding, Inc., 168 A.D.3d 645, 646, (1st Dep't 2019).  Accordingly, a party that wins a "net judgment" in its favor may not be a prevailing party if it still did not prevail on the central relief sought.  See id.; see also Zamora v. Morphix Co., Ltd., 2019 WL 4221558, at *6 (S.D.N.Y. Sept. 5, 2019) (applying New York law, neither party was the prevailing party when each of their claims "was withdrawn or failed") (Buchwald, J.).

Park Lane argues that it was the prevailing party in the arbitration, emphasizing that the Amended Award ordered Unbnd to issue warrants to Park Lane equaling 0.805% of

Unbnd stock, whereas the arbitrators did not rule in favor of Unbnd on any of its claims.  In response, Unbnd urges that it was the prevailing party because the Amended Award denied Park Lane's claims for more than $1 million in damages.  The Proposed Final Award submitted by Park Lane sought the 0.805% warrants ultimately granted by the Award and the Amended Award, as well as $175,000 in success fees and $207,003 in accrued interest, $200,000 in fees resulting from Unbnd declining investments plus $445,020 in accrued interest, $6,250 for revenue that Unbnd received from a third party, and an additional 1.75% of warrants.  (ECF 26-6.)  Unbnd notes that its Statement of Claim in the arbitration sought declaratory relief that it was not required to make any such payments to Park Lane.  Unbnd further urges that the Amended Award's grant of warrants is heavily qualified, and expressly provided that Park Lane "shall not have any right to exercise the warrants pursuant to this Order" "unless and until one of the Investing Entities" converts its convertible note to equity.  (See ECF 20-4 at 7.)  According to Unbnd, it is unlikely that such a conversion will ever take place, rendering the Amended Award, in its view, essentially worthless to Park Lane.

The Court concludes that the arbitrators did not act in manifest disregard of the law by not awarding attorneys' fees because the record would permit the arbitrators to reasonably conclude that there was no prevailing party.  The arbitrators denied Park Lane's demand for more than $1 million in damages, awarded it 0.805% of the warrants in Unbnd's stock, and did not award it an additional 1.75% of warrants sought in Park Lane's Proposed Final Judgment.  While the Court is not in a position ascertain the value of the 0.805% in warrants, the face of the Amended Award makes Park Lane's exercise of the warrants contingent "on one of the Investing Entities convert[ing] its convertible note to equity . . . ."  Accordingly, the arbitrators could reasonably have concluded that the relief granted to Park Lane was of uncertain

value, and that its success was not "central" to its claims.  See Blue Sage, 168 A.D.3d at 646.

Similarly, while the arbitrators did not expressly grant any relief to Unbnd, Unbnd had sought

declarations that it was not required to make further payments to Park Lane.  None was ordered.

The Amended Award specifically states that "any requests for attorneys' fees" were denied,

which shows that the arbitrators specifically weighed whether a fees award was warranted and

concluded that it was not.

      In addition to the fee-shifting provision contained in section J(13) of the

Agreement, Park Lane has also pointed to a broader indemnification provision set forth at section

F(1), and urges that it is entitled to the reimbursement of attorneys' fees under its terms.  But

section F of the Agreement appears to governs the parties' indemnification obligations in the

event that a third-party claim arises, providing in part that "the indemnifying party shall be

entitled to assume the defense of such litigation or proceeding with counsel of its reasonable

choice" and requires each party not to enter any settlement potentially requiring indemnification

without first receiving the written consent of the other.  (Agrmt. § F(4).)  Park Lane's Answer

and Statement of Counterclaims quoted from section F and its Proposed Final Award referenced

the Agreement's "indemnification provision."  (ECF 26-7, -6.)  Unbnd argued to the arbitrators

that applying the indemnification provision would lead to nonsensical results, would override the

specific fee-shifting provision of section J(13) and was "a big distraction."  (Tr. 1775-77 (ECF

26-5).)

      While this Court need not conclusively construe the reach of the indemnification

provision, the arbitrators could reasonably have concluded that it applied to the parties'

obligations in the event of third-party claims, and, unlike the fee-shifting provision of section

J(13), did not apply in this arbitral proceeding between Unbnd and Park Lane.  See, e.g., Hooper

Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492-93 (1989) (indemnification clause at issue "is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. . . . [T]he requirement of notice and assumption of the defense has no logical application to a suit between the parties."). That conclusion would not be in manifest disregard of the law. See Seneca Nation, 988 F.3d at 625.

Because Park Lane has not met its heavy burden to demonstrate that the arbitrators' denial of attorneys' fees in the Amended Award was in manifest disregard of the law, its motion to partially vacate the Amended Award will be denied.

THE AMENDED AWARD WILL BE CONFIRMED IN ITS ENTIRETY.

Park Lane separately moves to confirm all other aspects of the Amended Award. Unbnd states in its response that "the Court should confirm the entire Amended Award with no exceptions." (ECF 36 at 1; see also id. at 3 ("Unbnd has not challenged the arbitration award and has no interest in doing so.").)

A party may move to confirm an arbitration award, and "the court must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C.A. § 9. The standard of review is "extremely deferential." Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., 57 F.4th 372, 378 (2d Cir. 2023).

For the reasons discussed, Park Lane's motion to partially vacate the Amended Award will be denied. The parties agree that the remainder of the Amended Award ought to be confirmed. Accordingly, the Amended Award will be confirmed in its entirety.

CONCLUSION.

Respondent's motion to dismiss the petition to partially vacate the Amended Award on timeliness grounds is DENIED. The petition to partially vacate the Amended

is DENIED.  The motion to confirm the Amended Award is GRANTED, and the Amended

Award is confirmed in its entirety.  The Clerk is respectfully directed to terminate the motions

(ECF 18, 32) and to close the case.

      SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
     September 9, 2024